### 19.  BAILEY COMPANY *v.* WEST LUMBER COMPANY.

1. The evidence in the justice's court, set out in the petition for certiorari (which was adopted by the magistrate), authorized the verdict in that court, and that verdict, having been approved by the judge of the superior court, will not be disturbed.

2. The correspondence of the parties, especially when taken with the fact that plaintiff treated the letters as a contract and attempted to carry out the agreement by filling defendant's order, is sufficient to establish a contract between the parties.

3. The agency of a person who is recognized by both parties as agent in regard to a particular transaction is sufficiently proved where the relation is wholly uncontradicted by the adverse party. A suit brought to enforce rights based upon unauthorized acts of an agent, or other person acting in behalf of a principal, may imply ratification of the acts of such person and dispense with the necessity of any further proof of ratification.

4. "If a proposal includes any qualifying conditions, the acceptance of it is an assent to those conditions, and gives the proposer the right to understand that the acceptance was in all things according to the terms of the offer." 7 Am. & Eng. Enc. Law, 131.  A party to a contract, in the absence of fraud, cannot avoid it by reason of misunderstanding it, unless it appear that his misunderstanding was not the result of his own fault or negligence.

5. Plaintiff's suit relieved defendant from the necessity of a demand for the lumber according to the terms of the contract.

Certiorari, from Fulton superior court—Judge Pendleton. March 28, 1906.

Argued January 9,—Decided March 2, 1907.

*Etheridge, Boykin & Etheridge,* for plaintiff.

*Walter McElreath,* for defendant.

RUSSELL, J.  The error alleged in this case is the overruling of a certiorari.  J. F. Bailey Company filed suit against West Lumber Company, in a justice's court, on an account for $22.25, "for demurrage and loss on selling price of lumber shipped July 7, 1904." The defendant in error, West Lumber Company, filed a plea in recoupment for the sum of $82.50, for failure to deliver goods alleged to have been purchased of plaintiff in error, and asked judgment for the difference between the contract price and the market value at the place of delivery.  In this plea the defendant contended that plaintiff had contracted to deliver a certain car-load of lumber, to wit, No. 1 common boards, at nine & 50/100 dollars per thousand.  It was further alleged that the market price of No. 1 common boards in Atlanta, at the date of the shipment, was fifteen dollars per thousand, and that the car-load which plaintiff agreed to sell would have been not less than fifteen thousand feet. The defendant in the plea asked, therefore, for the difference of five & 50/100 dollars per thousand feet between the price at which it claimed to have bought and the market price at the place of delivery, to wit the city of Atlanta, on fifteen thousand feet of lumber.  Before the case went to trial plaintiff in error attempted to dismiss its action, but upon defendant's objection the magistrate put the case to trial, and the defendant (now defendant in error) proceeded to introduce evidence to prove plaintiff's liability, and recovered a verdict for $82.50, the amount of damages it claimed. The plaintiff in error excepted to this verdict and the judgment thereon, and carried them to the superior court by certiorari.  Upon

consideration the judge of the superior court overruled the certiorari and refused a new trial; and this judgment is, by the bill of exceptions, assigned to be the error which this court is asked to review. In the petition for certiorari a new trial is asked: (1) Because, as alleged, the evidence showed that there was never a clear understanding between the parties in such a way as to constitute a valid contract. (2) The parties did not agree to the same thing and in the same sense unconditionally, unequivocally, and without variance of any sort. (3) Because the letters upon which West Lumber Company relied as the basis of their contract are signed by John J. Earle, and the evidence does not show that John J. Earle was an authorized agent of the Bailey Company. (4) Because there was no proof to show that the act of Earle was ever ratified by defendant, Bailey Company, or that they ever had any notice of his act and the circumstances under which Earle acted for them. (5) There was no proof of any demand ever being made upon J. F. Bailey Company for delivery of No. 1 common boards. The statement of these assignments of error shows that the case depends largely upon the construction of the evidence by the jury in the first place, and the review of that construction by the court in the second instance. We shall consider the first two grounds together; and while there appears to have been, so far as the direct evidence is concerned, a claim of misunderstanding between the parties, the jury could well infer from the uncontradicted circumstances of the case that a contract was entered into on the part of the plaintiff to furnish car of No. 1 boards at the price mentioned in plaintiff's proposal. The correspondence introduced before the jury would have made a contract before the alleged misunderstanding came into existence. There was an invitation for a proposal, a proposal, and an acceptance; and this was followed by shipment of the articles referred to in the very initiation of the correspondence. The first letter, May 28, 1904, addressed to West Lumber Company and signed by Earle, states: "We have three cars 13/16 x 6 and up No. 1, Common Boards D2S, en route to your city. If you can use same, we would be pleased to have your best offer by return mail." Second, the letter dated May 31, 1904, addressed to J. F. Bailey Company, and signed by West Lumber Company, says: "Yours of 28th inst. to hand and noted. We will take one car of this lumber at $9.50 per thousand, f. o. b. Atlanta,

cash in ten days, less two per cent., provided the lumber is sound and square edge; otherwise at half price." Third, the letter of June 3, 1904, addressed to West Lumber Company and signed J. F. Bailey Company, per Earle, and stating: "We have your favor of 31st inst., and do not quite understand your order. However, we are entering same. We note you say price $9.50, less 2 per cent., provided the lumber is sound and square edge; otherwise at half price, etc., etc., etc." The plaintiff treated these letters as constituting a contract between the parties; it shipped certain lumber in what it asserted was a compliance with the contract. The jury was authorized to find there was no misunderstanding except such as was created by the plaintiff. There was no dispute as to the market value of boards at Atlanta; the only question was whether the Bailey Company was to furnish that kind of lumber or a different kind; and from the correspondence it would seem that the jury was at least *authorized* to sustain the contention of the defendant. The plaintiff in error insists that the contract must relate back to the letter written by Earle, and that it is not shown in the evidence that John J. Earle was an authorized agent of J. F. Bailey Company upon whose letters West Lumber Company rely to establish their contract, and further contends, if the letters signed by J. J. Earle are presumed to have been written by him as an authorized agent of Bailey Company, that there is nothing showing that the letters are genuine. In *Freeman* v. *Brewster,* 93 *Ga.* 649 (6), the court held that "a letter is not admissible in evidence without proof of its being genuine, and this proof can not be supplied solely by what appears on the face of the letter itself, to wit, the contents, the letter-head, etc." We think the evidence, without regard to the contents or the printed letter-head, proved the genuineness of the letters so as to make them admissible; and certainly the action of the Bailey Company in attempting to perform the contract, which in any view of the case had its inception in the letters and was made by them, disposes of all question as the authority of Earle to write and sign the letters constituting the contract. If it had not authorized him before, it adopted his action and ratified it, certainly by suing on the contract. Thereby it admitted the genuineness of the letters (whatever might be the variance between the parties as to the construction to be placed upon them), and it could not be heard to say

that there was no contract between the parties or that Earle acted without authority. "The agency of a person, who is recognized as such in regard to a particular transaction, is sufficiently proved, where the relation is wholly uncontradicted and unanswered by the adverse party." *Liverpool Insurance Co.* v. *Ellington, 94 Ga.* 785. "Implied ratification arises when the alleged principal claims and seeks to enforce by suit rights based upon the unauthorized act of an agent or other person acting in behalf of the principal." 1 Am. & Eng. Enc. Law, 1209. After the plaintiff filed its suit and after the defendant had filed its plea of recoupment, the plaintiff attempted to withdraw its action and to dismiss the suit. There was no error in the court's refusal to allow this to be done. Nothing is better settled than that where a defendant (after he has been haled into court) himself asks for affirmative relief, he is entitled to proceed with his counter-action. The other grounds of error assigned are fully covered by the headnotes thereon, and do not require further elaboration. There was no error in overruling the certiorari.                    *Judgment affirmed.*